IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS J. FURLONG, *et al.*, *

*Plaintiffs*, *

v. * Civil Action No. RDB-23-2045

ANTHONY G. BROWN, *et al.*, *

*Defendants*. *

* * * * * * * * * * * * *

**MEMORANDUM ORDER**

This case involves a challenge to the constitutionality of a Maryland law that prohibits out-of-state alcohol manufacturers from shipping alcohol directly to consumers. Md. Code Ann., Alcoholic Beverages § 2-219(c). The law is scheduled to expire on June 30, 2024, but it has previously been extended twice. The plaintiffs, a Maryland resident and two breweries located in Washington State, have brought this suit against Maryland Attorney General Anthony G. Brown, members of the Maryland Alcohol, Tobacco, and Cannabis Commission, and the Executive Director of the Commission Jeffrey A. Kelly under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202. The plaintiffs argue that the Act violates the Commerce Clause, U.S. Const. art. I, § 8, cl. 3., and discriminates against out-of-state beer producers engaged in interstate commerce. They seek a declaratory judgment that the regulatory scheme is unconstitutional and an injunction requiring the Defendants to allow out-of-state beer producers to sell, ship, and deliver beer directly to Maryland consumers on the same terms as in-state beer producers.

Presently pending are Defendants' Motion to Dismiss Improper Defendants (ECF No. 7) and Motion to Dismiss the Complaint (ECF No. 8). Plaintiffs consent to the Motion to Dismiss Improper Defendants (ECF No. 7), and accordingly that motion is GRANTED.[1] In their Motion to Dismiss the Complaint (ECF No. 8), Defendants argue that the Act is permitted by Section Two of the Twenty-First Amendment under the test announced by the United States Court of Appeals for the Fourth Circuit in *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 567 (2023). Plaintiffs respond that Defendants have failed to articulate a legitimate nonprotectionist ground for the law. *Id.* at 224. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motion to Dismiss the Complaint (ECF No. 8) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiffs' Complaint, and accepted as true for the purpose of Defendants' Motion to Dismiss.

---

[1] The parties have agreed that the individual State Commissioners Alan Silverstein, Barbara Wahl, Betty Buck, Robert Poole, and Eric Morrisette are not proper defendants in this action seeking declaratory and injunctive relief. The case shall be recaptioned to reflect that the Honorable Anthony G. Brown, the Attorney General of Maryland, and Jeffrey A. Kelly, the Executive Director of the Maryland Alcohol, Tobacco, and Cannabis Commission, are the remaining defendants in this case.

Maryland regulates alcohol production and distribution at three different levels: (1) manufacturing, (2) wholesaling, and (3) retailing. *See* Department of Legis. Servs., *Regulation of the Alcoholic Beverages Industry in Maryland* 13 (2017). This three-tier system requires separate licenses for businesses at each level. Manufacturers are only allowed to sell directly to consumers under limited circumstances. *See*, *e.g.*, Md. Code Ann., Alc. Bev. & Can. § 2-207(c) and (f) (allowing tasting and selling at breweries in limited quantities). On May 29, 2020, Maryland Governor Larry Hogan issued Executive Order No. 20-05-29-01, suspending the three-tier system to permit licensed in-state, but not out-of-state, manufacturers to ship alcohol directly to consumers. (ECF No. 8-1 at 4.) This order, initially made in response to the COVID-19 pandemic, was passed into law by the Maryland legislature during the 2021 legislative session. *See* 2021 Md. Laws, Ch. 359 (codified at Md. Code Ann., Alc. Bev. & Can. § 2-219(c) ("the Direct Shipping Act")). The Act permits licensed Maryland manufacturers to ship alcohol directly to consumers without first having to distribute through wholesalers and retailers. (ECF No. 8-1 at 5.) The Direct Shipping Act went into effect on May 18, 2021, and it was scheduled to terminate on December 31, 2022. 2021 Md. Laws, Ch. 359, § 4. The sunset date was postponed twice, initially until June 30, 2023 and then to June 30, 2024. 2022 Md. Laws, Chs. 477, 478; 2023 Md. Laws, Ch. 594, § 1. Under current regulations, out-of-state manufacturers remain required to sell their products through in-state wholesalers, whereas in-state manufacturers may ship directly to consumers. (ECF No. 8-1 at 6.) To qualify for a state-wide alcohol license, including a manufacturer's license, three officers of a corporation must apply, and at least one of the three officers must be a resident at the time of the application and for the duration the license is in effect. Md. Code Ann., Alc. Bev. & Can. §§ 3-101, 3-105.

"This residency requirement severely limits the ability of foreign alcohol manufacturers to qualify for a Maryland manufacturer's license and, without it, they cannot legally ship alcohol, including beer, directly to a consumer in Maryland . . . ." (ECF No. 8-1 at 6 (citing Md. Code Ann., Alc. Bev. & Can. § 6-327(a)(1)).).

Plaintiff Douglas Furlong is a resident of Baltimore County, Maryland and is over the age of twenty-one. (ECF No. 1 ¶ 3.) Furlong would like to purchase craft beer from out-of-state beer producers in Washington State and have those beers shipped to his residence in Maryland. (*Id.*) Plaintiff Mirage Beer Company is a Washington company that operates a brewery in Seattle, Washington, sells its beers online, and ships beer directly to customers. (*Id.* ¶ 4–5.) Plaintiff Varietal Beer Company is a Washington company that operates a brewery in Sunnyside, Washington. (*Id.* ¶ 6.) Both Mirage and Varietal have received requests to sell, ship, and deliver beer to Maryland consumers, and they intend to do so if Maryland laws prohibiting such sales cease to have effect. (*Id.* ¶ 4, 6.)

On July 31, 2023, Furlong, Mirage, and Varietal filed suit in this Court against Maryland Attorney General Anthony G. Brown, members of the Maryland Alcohol, Tobacco, and Cannabis Commission, and the Commission's Executive Director Jeffrey A. Kelly. (ECF No. 1.) The Complaint alleges that the Direct Shipping Act is unconstitutional under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. Defendants moved to dismiss the Complaint with respect to the members of the Commission, arguing that they have no authority to administer the Direct Shipping Act. (ECF No. 7.) Plaintiffs consented to this motion. (ECF No. 9.) Accordingly, the case is DISMISSED with respect to Defendants Alan Silverstein, Barbara Wahl, Betty Buck, Robert Poole, and Eric Morrisette.

Presently pending is Defendants' Motion to Dismiss the Complaint. (ECF No. 8.) In the motion, Defendants argue that "[a]lthough the Direct Shipping Act favors in-state, over out-of-state, alcohol manufacturers, § 2 of the Twenty-First Amendment justifies the Act because the Legislature acted to prevent the failure of alcohol manufacturers while maintaining the three-tier system, a legitimate nonprotectionist reason." (ECF No. 8-1 at 12.) Plaintiffs respond that Defendants' reason for the Act is protectionist and therefore cannot be saved by Section Two of the Twenty-First Amendment. (ECF No. 10 at 1.) The matter is ripe for review.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must,

however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011). "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). "[I]t is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Trimble*, 484 F.3d at 705).

**ANALYSIS**

Section Two of the Twenty-First Amendment gives States the power to regulate alcohol. U.S. Const. amend. XXI, § 2. States' regulation of alcohol is limited, however, to the extent that regulations may conflict with the Commerce Clause. U.S. Const. art. I, § 8, cl. 3. The Commerce Clause "is framed as a positive grant of power to Congress." *Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542, 548 (2015). Nevertheless, the Supreme Court has "long held that this Clause also prohibits state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). Known as "the dormant Commerce Clause," "this 'negative' aspect of the Commerce Clause" supports

interstate commerce and guards against protectionism. *Id.* (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988)). Reading Section Two together with the Commerce Clause, the Supreme Court has determined that "§ 2 grants States latitude with respect to the regulation of alcohol, but the Court has repeatedly declined to read § 2 as allowing the States to violate the 'nondiscrimination principle' that was a central feature of the regulatory regime that the provision was meant to constitutionalize." *Tenn. Wine*, 139 S. Ct. at 2470 (quoting *Granholm v. Heald*, 544 U.S. 460, 487 (2005)).

Following the Supreme Court's decision in *Tennessee Wine*, the United States Court of Appeals for the Fourth Circuit adheres to "a two-step framework for assessing alcoholic beverage control laws that are challenged under the dormant Commerce Clause. First, a court must ask whether the challenged regime discriminates against interstate commerce." *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214, 222 (4th Cir. 2022) (quoting *Tenn. Wine*, 139 S. Ct. at 2474), *cert. denied,* 143 S. Ct. 567 (2023). If the regime is not discriminatory, it is constitutional. However, if the regime is discriminatory, "the court proceeds to the second step and assesses 'whether the challenged [regime] can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground.'" *B-21 Wines*, 36 F.4th at 222 (quoting *Tenn. Wine*, 139 S. Ct. at 2474).

In this case, Defendants argue that Maryland's Direct Shipping Act, "put forward *after* the onset of the pandemic, arose out of existential concerns for the manufacturing industry." (ECF No. 8-1 at 11.) "[T]he General Assembly intended to allow manufacturers to recoup capital investments and to recalibrate their businesses after suffering large losses when the Governor closed their tap rooms." (*Id.*) In other words, "the General Assembly intended to

prevent failure of the industry . . . ." (*Id.* at 12 n.2.) Initially intended to be in effect only "for a finite period," the Act was designed "to prevent Maryland's alcohol manufacturing industry from suffering considerable losses due to capital investments manufacturers made in 2020 to ship their products directly to consumers." (*Id.* at 4.) It has since been extended twice, however, as "industry witnesses [have] reiterated their need to recover the revenue they lost during the pandemic . . . ." (*Id.* at 5.)

Defendants concede that Maryland's Direct Shipping Act favors in-state manufacturers over out-of-state manufacturers. (*See id.* at 12.) "Under Maryland's alcohol licensing regime, only in-state manufacturers qualify to ship directly to consumers; out-of-state manufacturers must still sell their product through in-state wholesalers." (*Id.* at 6.) This is a clear instance of discrimination against interstate commerce. That does not end the inquiry, however. The Supreme Court's jurisprudence under Section Two of the Twenty-First Amendment provides that such discrimination may nevertheless be permissible if it "can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Tenn. Wine*, 139 S. Ct. at 2474.

In *B-21 Wines*, the Fourth Circuit affirmed the district court's ruling that "North Carolina's interest in preserving its three-tier system is itself a legitimate nonprotectionist ground that constitutes a sufficient justification." 36 F.4th at 227. However, whereas the law in that case ensured "that all wine sold to North Carolina consumers by retailers goes through the State's three-tier system," 36 F.4th at 229, in this case the Act undermines the three-tier system by allowing Maryland manufacturers to bypass wholesalers and retailers altogether. As Defendants note, the Direct Shipping Act "permits a holder of a Maryland manufacturer's

license to ship alcohol directly to a consumer without first having to distribute through a wholesaler and retailer." (ECF No. 8-1 at 5.) Very similar circumstances were presented in *Beskind v. Easley*, 325 F.3d 506 (4th Cir. 2003). In *Beskind*, the Fourth Circuit "reviewed and struck down North Carolina statutes that authorized in-state wineries to bypass the State's three-tier system and sell directly to consumers, but prohibited out-of-state wineries from doing the same." *B-21 Wines*, 36 F.4th at 226 (citing *Beskind*, 325 F.3d at 509). Likewise, in *Granholm*, the Supreme Court struck down a regime that allowed in-state wine producers "to ship wine directly to consumers, but prohibited out-of-state wine producers from doing the same." *B-21 Wines*, 36 F.4th at 229 (citing *Granholm*, 544 U.S. at 466). Although *Beskind* and *Granholm* predate *Tennessee Wine* and *B-21 Wines*, their reasoning regarding three-tier systems is consistent with both of those cases. In fact, *B-21 Wines* distinguished *Beskind* and *Granholm* precisely because the regimes in those cases "allowed only in-state wine producers to bypass the statutory three-tier system of alcohol distribution and ship directly to consumers." *B-21 Wines*, 36 F.4th at 229 (citing *Granholm*, 544 U.S. at 474; *Beskind*, 325 F.3d at 509). Supreme Court and Fourth Circuit caselaw is therefore consistent: if a state's three-tier system is posited as a legitimate nonprotectionist ground for discriminating against out-of-state commerce, the system must not be undermined by the law in question. In this case, Maryland's Direct Shipping Act subverts the three-tier system by allowing in-state, but not out-of-state, manufacturers to bypass the three-tier system and ship directly to consumers.

The Direct Shipping Act is set to expire on June 30, 2024. At that point, this case may become moot. As it stands, however, the Direct Shipping Act remains in effect. This case therefore cannot be dismissed. Accordingly, the Motion to Dismiss (ECF No. 8) is DENIED.

## CONCLUSION

For foregoing reasons, it is this 15th day of March, 2024, ORDERED that:

1. Defendants' Motion to Dismiss (ECF No. 7) is GRANTED and the individual defendants Alan Silverstein, Barbara Wahl, Betty Buck, Robert Poole, and Eric Morrisette are DISMISSED. The Honorable Anthony G. Brown, the Attorney General of Maryland, and Jeffrey A. Kelly, the Executive Director of the Maryland Alcohol, Tobacco, and Cannabis Commission, are the remaining defendants in this case;
2. Defendants' Motion to Dismiss (ECF No. 8) is DENIED;
3. The Clerk of the Court shall transmit copies of this Memorandum Order to counsel of record.

Dated: March 15, 2024

/s/
Richard D. Bennett
United States Senior District Judge