IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS J. FURLONG *et al.*

    Plaintiffs

v.

THE HON. ANTHONY G. BROWN, *et al*

    Defendants

Case No. 1:23-cv-02045-RDB

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

---

**I. Introduction**

    The Plaintiffs are a Maryland beer consumer and two out-of-state breweries that produce craft beer. They challenge the constitutionality of provisions in the Maryland Alcoholic Beverages Code that prohibit out-of-state beer producers from delivering beer to Maryland consumers but allow in-state beer producers to do so. Plaintiffs contend that these laws violate the Commerce Clause and are not saved by the Twenty-first Amendment because they discriminate against out-of-state beer producers. One feature discriminates directly -- Maryland brewers can deliver beer to consumers but out-of-state brewers cannot. The second discriminates indirectly -- deliveries may only be made by the brewery's own employees, which discriminates in practical effect against the overwhelming number of out-of-state brewers whose only feasible method of delivery is by common carrier.

    Plaintiffs rely on three cases that hold that the state's regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause. A discriminatory liquor law is unconstitutional unless the State proves that the law advances a legitimate Twenty-first Amendment

1

interest that could not be served by reasonable nondiscriminatory alternatives. *Tennessee Wine & Spirits Retailers Assoc. v. Thomas*, 588 U.S. 504 (2019); *Granholm v. Heald,* 544 U.S. 460 (2005); *Beskind v. Easley*, 325 F.3d 506 (4th Cir. 2003). There is one other Fourth Circuit case on state regulation of alcohol: *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022). This Court has previously said that it is largely irrelevant because it involved the regulation of retailers within the three-tier system and not the validity of allowing in-state, but not out-of-state, producers to bypass that system. Order on Motion to Dismiss at 9 (ECF No. 14).

**II. The laws being challenged**

During the pendency of this case, Maryland amended its laws covering home delivery of beer, but did not change the basic law that only Maryland breweries may sell and deliver directly to consumers. Plaintiffs filed an amended complaint to reflect the change in law (ECF No. 35) on which this motion is based.

**A. The ban on home deliveries by out-of-state brewers**

State liquor laws are notoriously difficult to read and these are no exception. Maryland bans interstate beer deliveries through the following chain of laws: It authorizes a beer producer to deliver beer to consumers only if it first obtains a Direct Beer Delivery permit. Md. Code Ann, Alc. Bev. ("ABC") §§ 2-168,[1] 2-169(a)(2).[2] The permit may be issued only to an applicant who has both a Class 7 Limited Beer Wholesaler's license and a Maryland beer manufacturing license. ABC §§ 2-169(a)(1);[3] 2-308.[4] A beer manufacturer license may be issued only to a Maryland resident. ABC

---

[1]"Before a licensed manufacturer may engage in delivering beer directly to a consumer in the State, the manufacturer shall be issued a direct beer delivery permit."

[2]"The holder of a direct beer delivery permit ... may sell and deliver the permit holder's own product to an individual in the State."

[3]"To qualify for a direct beer delivery permit, an applicant shall be: (i) a person licensed in this State to engage in the manufacture of beer; and (ii) a holder of a Class 7 limited beer

§§ 2-211,[5] 3-102,[6] 3-105(b).[7] Out-of-state breweries are not eligible for a Maryland beer manufacturer's license and therefore cannot get a Direct Beer Delivery permit. Without that permit, out-of-state craft brewers are prohibited from delivering beer to Maryland consumers. ABC §§ 2-214.[8] Indeed, it is a felony to do so. ABC § 6-327.[9] Plaintiffs contend in Count I that this difference in treatment of in-state and out-of-state brewers directly discriminates against out-of-state interests.

### B. The ban on delivery by common carrier

Maryland prohibits all beer producers from delivering beer by common carrier. They may only deliver using their own employees. ABC § 2-169(a)(2).[10] This law does not directly discriminate against out-of-state brewers because it also applies to in-state brewers. However, its obvious effect

---

wholesaler's license."

[4]"There is a Class 7 limited beer wholesaler's license [that] may be issued only to a person that: (1) holds a Class 5 [beer] manufacturer's license, a Class 7 micro-brewery license, or a Class 8 farm brewery license."

[5]"To be issued a manufacturer's license, the following individuals shall reside in the State at the time of filing an application for the license: (1) for a sole proprietorship, the individual applicant; (2) for a corporation or limited liability company, the individual who qualifies as a resident applicant."

[6]"To be issued a manufacturer's license... an individual applicant shall be a resident of the State at the time the application is filed."

[7]"[A] license on behalf of a corporation ... shall be applied for and issued [if] (2) At least one of the three officers shall: (i)) be a resident of the State at the time the application is filed; and (ii) remain a resident of the State for the duration of time the license is in effect."

[8]"Except as otherwise provided with respect to a delivery permit ... a holder of a manufacturer's license may not sell or deliver alcoholic beverages to a person in the State that does not hold a license or permit under this article."

[9]"A person in the business of selling or distributing alcoholic beverages in or from another state may not ship, cause to be shipped, or deliver alcoholic beverages directly to a recipient in the State if the seller, distributor, shipper, transporter, or recipient does not hold the required license or permit.... A person who violates this section is guilty of a felony."

[10]"The holder of a direct beer delivery permit ... may sell and deliver the permit holder's own product to an individual in the State if: (i) the delivery is made by an employee..."

is to make it unfeasible as a practical matter for out-of-state brewers to make home deliveries even if they become eligible for a Direct Beer Delivery permit. Plaintiffs contend in Count II of the complaint that this law also discriminates against out-of-state interests.

### III. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the U.S. Constitution. The defendants are state officials with responsibility for enforcing the laws at issue. The State concedes that Defendant Kelly has state enforcement authority, ECF No. 7-1 at 5, and 27 U.S.C. § 122a gives Defendant Brown the authority to enforce these laws in federal court. Plaintiffs seek declaratory and injunctive relief, so the case is not barred by Eleventh Amendment immunity. *Ex Parte Young,* 209 U.S. 123 (1908).

### IV. Standing

In every case, Plaintiffs must establish standing: (1) injury, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Baehr v. Creig Northrop Team, PC,* 953 F.3d 244, 252 (4th Cir. 2020). In cases challenging the constitutionality of a law, the essence of the standing inquiry is whether the plaintiff "has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Clatterbruck v. City of Charlottesville*, 703 F.3d 549, 553 (4th Cir. 2013). Where a plaintiff is the object of a restrictive regulation and the defendant is the official responsible for its enforcement, as in this case, "there is ordinarily little question" that the plaintiff has standing to challenge that regulation. *Lujan.* 504 U.S. at 561-62; *FDA v. Alliance for Hippocratic Med.,* 602 U.S. 367, 380-81 (2024).

The Plaintiffs are being denied their constitutional right to engage in interstate commerce, *GMC v. Tracy*, 519 U.S. 278, 286 (1997). "The loss of [constitutional rights], for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 373 (1976). The out-of-state brewers lose sales and the opportunity to compete for business in Maryland. Baum Decl. (Exh. 1) ¶¶ 6-9; Foard Decl. (Exh.2) ¶ 5. Douglas Furlong is prevented from purchasing out-of-state craft beers that he wants. Furlong Decl. (Ex. 3) ¶¶ 4-8. These are specific injuries that are caused by the laws making interstate delivery and shipment unlawful. Baum Decl. ¶¶ 8, 10; Foard Decl. ¶ 5; Furlong Decl. ¶¶ 6-8. They will be redressed if the Defendants are enjoined from enforcing them. Varietal and Vortex have said they will then obtain any necessary licenses, comply with Maryland conditions, and deliver their beer to Maryland consumers. Baum Decl. ¶¶ 10-11; Foard Decl. ¶ 6. Furlong has said he will purchase it. Furlong Decl. ¶ 10. No independent action of a third party is involved, so the Plaintiffs have standing. *DiCocco v. Garland,* 52 F.4th 588, 592 (4th Cir. 2022).

**V. Background facts**

Douglas Furlong is a beer afficionado from Baltimore. He looks for and buys new and interesting beers from small craft brewers, many of which are not sold in Maryland but can only be acquired directly from out-of-state breweries. Furlong Decl.(Exh.3) ¶¶ 1-5. Varietal and Vortex Beer Companies are small out-of-state craft brewers whose products are not sold in Maryland. Baum Decl. (Ex.1) ¶¶ 3, 4, 7; Foard Decl. (Exh.2) ¶ 2. They have had requests from Maryland consumers, including Furlong, to deliver beer to them but cannot do so because it is unlawful. Baum Decl. ¶¶ 6, 8; Furlong Decl. ¶¶ 6-8; Foard Decl. ¶¶ 4-5. Vortex is located in Pennsylvania, two miles from the Maryland border, and could deliver using his own employees. Foard Decl. ¶¶ 3, 7. Varietal is in the state of Washington and the only feasible way it could deliver to Maryland is by common carrier. Baum Decl. ¶¶ 5. All plaintiffs have agreed they would get licenses, abide by Maryland regulations, report sales and pay taxes. Baum Decl. ¶¶ 10-11; Foard Decl. ¶ 8; Furlong Decl. ¶ 11.

**VI. Maryland's laws that prohibit out-of-state brewers from delivering beer to consumers, when in-state brewers are allowed to do so, are unconstitutional**

    **A. Summary judgment standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Lawson v. Union Cnty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016). An issue of fact is material if it could affect the outcome of the case under the prevailing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When cross-motions are filed, courts consider each motion separately on its own merits. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011). Courts resolve all factual disputes and draw all reasonable inferences in the light most favorable to the opposing party. *Belmora LLC v. Bayer Consumer Care AG,* 987 F.3d 284, 291 (4th Cir. 2021).

In this case, the State bears the most important burden of proof -- justifying the need to discriminate by producing evidence demonstrating that the law advances a legitimate purpose that cannot adequately be served by reasonable nondiscriminatory alternatives. *Beskind v. Easley*, 325 F.3d at 515. See pp. 10-11, *infra*. When Plaintiffs seeks summary judgment on an issue for which Defendants have the burden of proof, they need not initially "produce evidence showing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). They may discharge their burden by "pointing out to the district court ... that there is an absence of evidence to support the [Defendants'] case." *Id*. The Defendant must then come forward with specific facts showing that there is a genuine issue for trial. *Anderson v. Diamondback Invest. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024).

    **b. Framework for assessing the constitutionality of a state liquor law**

Although the Twenty-first Amendment gives states broad authority to regulate the sale of

6

alcohol, that authority "is limited by the nondiscrimination principle of the Commerce Clause." *Granholm,* 544 U.S. at 487; *Tenn. Wine,* 588 U.S. at 533. "[Both] the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution [and] each must be considered." *Bacchus Imports Ltd. v. Dias*, 468 U.S. at 275. Courts have generally adopted a two-step analytical framework under which "we determine first whether the purported State regulation violates the Commerce Clause without consideration of the Twenty-first Amendment. If we conclude that it does, then we look at the State's Twenty-first Amendment interests." *Beskind v. Easley*, 325 F.3d at 513-14.

### c. The laws banning interstate beer deliveries violate the nondiscrimination principle of the Commerce Clause

This Court determined that the prior version of this law was discriminatory because it allowed in-state, but not out-of-state, brewers to bypass the three-tier system and sell and deliver directly to consumers. Order on Mot. Dismiss at 8 (ECF No. 14). The revised law contains the same differential treatment of in-state and out-of-state brewers and is also discriminatory.

The Commerce Clause gives Congress the power to regulate commerce among the several States. U.S. Const., art. I, § 8, cl. 3. It has long been understood that the Clause also has a negative aspect that denies states the power to discriminate against the flow of goods moving in interstate commerce. The so-called "dormant" Commerce Clause is driven by concerns about economic protectionism, *i.e.*, regulatory measures that benefit in-state economic interests by burdening or banning out-of-state competitors. *Tenn. Wine,* 588 U.S. at 514-15; *Sandlands C & D LLC v. Co. of Horry*, 737 F.3d 45, 51 (4th Cir. 2013). Protectionism is forbidden in all fields of commerce, including the distribution of alcoholic beverages. *Tenn. Wine,* 588 U.S. at 531 ("protectionism, we have stressed, is not [a legitimate] interest" under the 21st Amendment).

7

Discrimination under the Commerce Clause simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Granholm*, 5644 U.S. at 472. It does not matter whether the law is discriminatory on its face. Discrimination *de jure* and *de facto* are equally unconstitutional. In every case the issue is whether the statute "will in its practical operation work discrimination against interstate commerce," *West Lynn Creamery, Inc. v. Healy*, 512 U.S. at 201, by "caus[ing] local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market." *Exxon Corp. v. Maryland,* 437 U.S. 117, 126 n. 16 (1978). "[P]rotecting [local industry] from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." *West Lynn Creamery v. Healy,* 512 U.S. 186, 205 (1994).

Maryland's outright ban on interstate beer deliveries is clearly discriminatory. It treats in-state and out-of-state beer producers differently. Only a Maryland resident can get the necessary licenses, see pp. 2-3, *supra*, and the Supreme Court has said that a residency requirement for a license is discriminatory because it "blatantly favors the State's residents." *Tenn. Wine,* 588 U.S. at 510. Because of the residency rule, only in-state brewers can get a Direct Beer Delivery permit; out-of-state brewers cannot. There is no question that the ability to offer home delivery is a commercial advantage that benefits local brewers. One need only look at the army of FedEx, UPS, and Amazon trucks driving down residential streets.[11] The Supreme Court and this Circuit have previously held that allowing in-state but not out-of-state producers to make home deliveries is discriminatory. *Granholm,* 544 U.S. at 474-75; *Beskind*, 325 F.3d at 515 (wine producers).

---

[11] See also Census Bureau News, Feb. 10, 2024 (total e-commerce sales for 2023 are estimated at $1,118.7 billion and account for 15.4% of the retail market). https://www2.census.gov/retail/releases/ historical/ecomm/23q4.pdf (viewed Nov. 18, 2024)

The ban on using common carriers, see pp. 3-4, *supra*, has a similar discriminatory effect. It prevents most out-of-state beer producers from making home deliveries while allowing most in-state producers to do so. It is irrelevant that a few out-of-state brewers like Vortex might be able to deliver via their own employees or that a few Maryland brewers might be adversely affected.[12] The question is whether "its effect is to *favor* in-state economic interests over out-of-state interests." *Granholm,* 544 U.S. at 487 (emphasis supplied); *Beskind,* 325 F.3d at 514-15. For most out-of-state beer producers, the only economically feasible way they could deliver beer to Maryland consumers is by common carrier. The Supreme Court has held that "mak[ing] direct sales impractical from an economic standpoint" constitutes discrimination in effect." *Granholm*, 544 U.S. at 466.

The ban on interstate beer delivery discriminates in one other way -- it "deprives [Maryland] citizens of their right to have access to the markets of other States on equal terms." *Granholm*, 544 U.S. at 473. Every interstate transaction has two parties – a seller and a buyer. The buyer has just as much right to engage in interstate commerce free from restrictive state regulation as the seller. *Dennis v. Higgins,* 498 U.S. 439, 449-50 (1991); *H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 539 (1949) ("[e]very consumer may look to the free competition from every producing area in the Nation"). Many of the craft beers that Furlong wants to buy, including those from Varietal, are not available in Maryland. Furlong Decl. (Exh.3) ¶¶ 5, 7-8; Baum Decl. (Exh.1) ¶ 7. The only way to acquire them is to buy them from the out-of-state brewer and have them delivered.

**d. The State has no evidence that discrimination is needed to advance its Twenty-first Amendment interests**

If the product were anything other alcohol, Maryland's ban on interstate beer delivery could be easily struck down because discrimination is a "virtually *per se"* violation of the Commerce Clause.

---

[12]E.g., Route 40 Brewing Co. in Frostburg, Maryland, is 150 miles from Baltimore according to Google Maps,

9

*Granholm,* 544 U.S. at 487. However, when alcohol is involved, the Twenty-first Amendment is also implicated. It "give[s] each State the authority to address alcohol-related public health and safety issues," *Tenn. Wine*, 588 at 539, but is not a get-out-of-jail-free card. It did not repeal the Commerce Clause, *Granholm,* 544 U.S. at 487, and "is not a license to impose all manner of protectionist restrictions on commerce in alcoholic beverages." *Tenn. Wine,* 588 U.S. at 510.

What the Amendment does is to give the State the opportunity to justify "the challenged requirement ... as a public health or safety measure." *Id*. at 539. This inquiry "require[s] an examination of the actual purpose and effect of a challenged law" because not "every statute enacted ostensibly for the promotion of the public health, the public morals, or the public safety is to be accepted as a legitimate exertion" of state authority. *Id* at 538, *quoting Mugler v. Kansas,* 123 U.S. 623, 661 (1887) (internal quotation marks omitted). If the State fails to prove that the predominant effect of the law is "the protection of public health or safety, it is not shielded by § 2." *Id.* at 540.

The Supreme Court has set out four elements to be considered when deciding if a state has shown that a discriminatory law is reasonably necessary to protect public health or safety.

1) Has the State shown that the "requirement *actually* promotes public health or safety?" *Tenn. Wine,* 588 U.S. at 540 (emphasis added). This is a question of the actual effect of the law, not just its purpose or potential. *Id.*

2) Has the State shown that "nondiscriminatory alternatives would be insufficient to further those interests?" *Id.* Without such proof, the State has not shown that discrimination is "reasonably necessary." *Id.* at 533.

3) "Concrete evidence" is required. "[S]peculation [and] unsupported assertions are insufficient to sustain a law that would otherwise violate the Commerce Clause." *Id.* at 540.

10

4) The "burden is on the State." *Granholm,* 544 U.S. at 492. It must present enough admissible and persuasive evidence to overcome the law's inherent protectionism and show that its "*predominant* effect [is] the protection of public health or safety." *Tenn. Wine*, 588 U.S. at 540 (emphasis added). In a case like this one, where the protectionist effect is strong and definite -- the entire home delivery market is reserved for in-state retailers -- the State's evidence must be equally strong that significant adverse effects would occur if the total ban were lifted and that nothing else would work. *Id.* at 540-42.[13] The Supreme Court calls this an "exacting standard." *Granholm*, 544 U.S. at 493.

The State cannot meet the first part of its burden of proof. During the discovery period, the defendants disclosed no evidence to suggest that banning interstate beer deliveries actually reduces a threat to public health and safety that the legislature thinks is important. *Tenn. Wine,* 588 U.S. at 510, 539. The threat cannot be simply that the product is beer, which is an alcoholic beverage sometimes consumed by underage persons. Maryland freely allows the production, sale and consumption of beer. ABC §§ 2-207 to 2-209. The threat cannot be that the beer is being home-delivered. Maryland allows in-state brewers to make home deliveries. ABC § 2-169(a)(2). The threat cannot come from the use of common carriers because Maryland allows wineries to deliver by common carrier. ABC § 2-151(b) (common carrier permit).The threat cannot be that the producers are located in other states because Maryland allows wine producers in other states to deliver to consumers. ABC § 2-143 (direct wine shipper's permit). The threat is not that out-of-state brewers would be unlicensed and unregulated because Maryland can license and regulate them as it does for wine. ABC § 2-144. The breweries are already licensed and regulated by their home states, Baum Decl. (Exh 1) § 2, and the federal government. *E.g.*, 27 C.F.R. 25.1 et seq (300 beer regulations).

---

[13]This the equivalent of a preponderance of evidence standard. Predominance and preponderance mean the same thing. Am. Heritage Dictionary 1388 (5th ed. 2011).

The Supreme Court has said that one important measure of whether a restriction is reasonably necessary is whether, in other similar circumstances, a state allows the same activity it is now trying to prohibit. *Clark v Jeter,* 486 U.S. 456, 464 (1988).

Nor can the State meet the second part of its burden of proof. During the discovery period, the defendants produced no evidence suggesting that any inherent risks associated with the distribution of beer could not be addressed the way Maryland addresses every other aspect of the distribution of alcohol -- through licensing and regulation.  See Maryland Alc. Tobacco & Cannabis Comm'n, https://atcc.maryland.gov/industry/alcohol/ (listing 32 licenses and permits). Indeed, the Supreme Court has endorsed the use of evenhanded permits as a reasonable alternative to a total ban on home delivery, *Granholm,* 544 U.S. at 491, noting that "[t]his is also the procedure sanctioned by the National Conference of State Legislatures in their Model Direct Shipping Bill." *Id.* at 491-92. To justify singling out and banning interstate beer deliveries, the state would have to show it "poses such a unique threat" that the remedies used elsewhere would not work. *Id.* at 492.

The question in this case is whether the State has justified a specific discriminatory feature of its regulatory system, not whether its overall regulatory scheme is valid. Many states, including Maryland, have adopted some variation of a three-tier regulatory system,[14] and *dictum* in *Granholm* said that "[w]e have previously recognized that the three-tier system itself is 'unquestionably legitimate.'" 544 U.S. at 489. But the Supreme Court itself has noted that this *dictum* "did not suggest that § 2 sanctions every discriminatory feature that a State may incorporate into its three-tiered scheme." *Tenn. Wine*, 588 U.S. at 535. Courts must "analyze [each] provision on its own." *Id*. at 539. The only feature at issue here is the discriminatory effect of allowing in-state brewers to bypass the three-tier system and deliver directly to consumers, but prohibiting out-of-

---

[14] A classic three-tier system requires liquor to pass from a producer through an independent wholesaler and retailer to prevent producers (especially of beer) from controlling the market.

state brewers from doing so. This does not implicate the three-tier system itself.

The courts have held similar laws unconstitutional that allowed in-state but not out-of-state *wine* producers to bypass the three-tier system and sell directly to consumers. *Granholm*, 544 U.S. at 493; *Beskind*, 325 F.3d at 509, 517. Unless the defendants can explain what the difference is between beer and wine that justifies departing from *Granholm* and *Beskind*, this court should follow those precedents and declare Maryland's ban on interstate beer deliveries similarly unconstitutional.

## VII. Remedy

As a remedy, the court should award the following relief:

1. Declare unconstitutional and enjoin the enforcement of ABC §§ 2-211, 3-102, and 3-105(b) which impose a residency requirement on the issuance of manufacturer and brewery licenses.

2. Declare unconstitutional and enjoin the enforcement of ABC §§ 2-169(a)(1) which restricts Direct Beer Delivery permits to applicants that are licensed to manufacture beer in this state and hold a Maryland limited beer wholesaler's license.

3. Enjoin the defendants from refusing to issue Direct Beer Delivery permits to the plaintiffs and other out-of-state brewers who hold licenses in their home states.

4. Declare unconstitutional and enjoin the enforcement of ABC §§ 2-214 and 6-327, which make it unlawful for an out-of-state producer to deliver or ship beer to a consumer as applied to licensed out-of-state beer producers.

5. Declare unconstitutional and enjoin the enforcement of ABC § 2-169(a)(2)(i) requiring the holders of Direct Beer Delivery permits to make deliveries only with their own employees.

In *Beskind v. Easley,* the Fourth Circuit imposed a quite different remedy. It eliminated discrimination by taking away the direct shipping privileges of in-state producers based on evidence that the North Carolina legislature had a strong preference for limiting, rather than expanding, home deliveries. 325 F.3d at 518-20. The opposite is true here. As the defendants have conceded, the

13

Maryland legislature was motivated by a strong preference to expand the opportunities for its craft brewers to make home deliveries in order to save them from economic collapse. Def, Memo. (ECF 8-1) at 4, 11-12. The legislature reenacted that privilege this summer for the same reason. It is inconceivable they would want this court to take that privilege away.

**VII. Conclusion**

For the foregoing reasons, this Court should grant summary judgment to the Plaintiffs as requested herein.

November 22, 2024

Respectfully submitted:
*Attorneys for plaintiffs*

s/ James A. Tanford
James A. Tanford (Admitted Pro Hac Vice)
Robert D. Epstein (Admitted Pro Hac Vice)
EPSTEIN SEIF PORTER & BEUTEL, LLP
50 S. Meridian St. #505
Indianapolis IN 46204
tel. (317) 639-1326
fax (317) 638-9891
tanford@indiana.edu
rdepstein@aol.com

s/ John A. Bourgeois
John A. Bourgeois (Bar No. 11834)
Steven M. Klepper (Bar No. 26664)
KRAMON & GRAHAM, P.A.
750 E Pratt St, Suite 1100
Baltimore, Maryland 21202
(410) 752-6030; (410) 539-1269 (fax)
jbourgeois@ kg-law.com
sklepper@kg-law.com