# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOUGLAS J. FURLONG,<br>VARIETAL BEER COMPANY,<br>VORTEX BREWING, CO., LLC | * | |
| | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Action No. RDB-23-2045 |
| THE HON. ANTHONY G. BROWN, | * | |
| *Attorney General of Maryland,* | | |
| JEFFREY A. KELLY, | * | |
| *Executive Director, Maryland Alcohol, Tobacco,* | | |
| *& Cannabis Commission* | * | |
| | | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

In this action for declaratory and injunctive relief under 42 U.S.C. § 1983, an individual Maryland resident and two out-of-state breweries challenge the constitutionality of Maryland laws that limit out-of-state breweries' ability to deliver beer directly to consumers in Maryland. Under the challenged laws, Maryland allows only in-state breweries to directly deliver beer to Maryland residents and requires such breweries to effectuate delivery by their own employees, rather than by common carrier. In short, the parties dispute whether such laws strike an appropriate balance between constitutional concerns of economic discrimination against out-of-state breweries and public policy concerns of safety in regulating the provision and consumption of alcohol in Maryland.

Specifically, this case triggers the interplay between two distinct provisions of the United States Constitution: the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, and the

Twenty-First Amendment, U.S. CONST. amend. XXI § 2. Plaintiffs contend that the Maryland laws are facially discriminatory and discriminatory in effect. The Commerce Clause affords Congress broad authority to regulate commerce among the states, U.S. CONST. art. I, § 8, cl. 3. Furthermore, the Supreme Court has held under the dormant Commerce Clause doctrine that the implied inverse of the Commerce Clause prohibits state laws that unduly restrict interstate commerce. Defendants contend that the questioned Maryland laws are essential components of the state's regulation of alcohol as permitted under the Twenty-First Amendment. Neither of the parties has requested a jury trial in this case, and both seek adjudication of this case in competing motions for summary judgment.

It is well recognized that "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (explaining courts may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial" (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948)). When both parties file competing motions for summary judgment, this Court considers each motion separately. The Court has reviewed the parties' submissions and conducted a virtual motions hearing on June 2, 2025.[1] Quite simply, there is a noticeable dearth of factual evidence presented and indeed the parties

---

[1] The undersigned Judge underwent back surgery shortly thereafter and apologizes to the parties for a delay in the issuance of the Memorandum Opinion and Order in this matter.

have only submitted eight exhibits.  This absence of factual background precludes the entry of summary judgment for either party in the context of the pending summary judgment motions.  A bench trial will permit this Court address the statutory scheme at issue and the public policy interests purportedly undergirding that scheme.  As explained further below, therefore, this case shall proceed to a bench trial.

Original Plaintiffs Douglas Furlong ("Individual Plaintiff" or "Furlong"), Varietal Beer Company ("Varietal"), and Mirage Brewing Company ("Mirage") (collectively, "Original Plaintiffs") initiated this action on July 31, 2023, by filing a one-Count Complaint (ECF No. 1) alleging a violation of the Commerce Clause, Art. I, § 8, cl. 3, of the United States Constitution against Attorney General of Maryland Anthony G. Brown ("AG Brown"); Jeffrey A. Kelly, in his official capacity as executive director of the Maryland Alcohol, Tobacco, and Cannabis Commission ("Director Kelly"); and several members of the Maryland Alcohol Tobacco and Cannabis Commission, including Alan Silverstein, in his official capacity as Chairperson ("Silverstein"); Barbara Wahl, in her official capacity as Vice-Chair ("Wahl"); and Betty Buck ("Buck"), Robert Poole ("Poole"), and Eric Morrissette ("Morrissette"), in their official capacities Commissioners (collectively, "Original Defendants").  (ECF No. 1.)

Original Defendants moved to dismiss (ECF No. 8), and this Court by Memorandum Order (ECF No. 14) dated March 15, 2024, granted dismissal as to Defendants Silverstein, Wahl, Buck, Poole, and Morrissette, but denied dismissal as to Defendants AG Brown and Director Kelly.  *See* (ECF No. 14 at 10).  Plaintiffs subsequently filed the operative Amended Complaint (ECF No. 35).  In the Amended Complaint, Furlong, Varietal, Mirage, and newly added Plaintiff Vortex Brewing Company, LLC ("Vortex") (collectively with Varietal,

3

"Brewery Plaintiffs") alleged against AG Brown and Director Kelly (collectively, "Defendants") commerce clause violation for discriminatory delivery privileges (Count I) and commerce clause violation for the discriminatory effect of the shipping ban (Count II). *See* (ECF No. 35-1 (Redlined Amended Complaint)). Defendants filed their Answer (ECF No. 38) to the Amended Complaint, and the parties notified the Court that they had completed discovery on October 25, 2024, *see* (ECF No. 42). On November 22, 2024, the parties by joint stipulation dismissed Plaintiff Mirage, but Furlong, Varietal, and Vortex (collectively, "Plaintiffs") remain parties to this action. (ECF No. 44.)

Having heard oral argument from the parties and having reviewed supplemental briefing filed since the June motions hearing, Plaintiffs' Motion for Summary Judgment (ECF No. 43) is DENIED and Defendants' Cross-Motion for Summary Judgment (ECF No. 52) is DENIED. This case shall proceed to a Bench Trial.

## BACKGROUND

Plaintiffs initiated this action to challenge Maryland laws that allow only in-state breweries to ship beer directly to Maryland consumers and require such breweries to effectuate shipment by their own employees. *See* (ECF No. 35). Brewery Plaintiffs include Vortex, which operates a brewery in the Commonwealth of Pennsylvania, and Varietal, which operates a brewery in the State of Washington and provides online sales to out-of-state consumers. (ECF No. 35 ¶¶ 8, 27; ECF No. 43-3 ¶ 2; ECF No. 43-1 ¶¶ 1–6.) Varietal ships its beer products for home delivery using common carriers such as the United Parcel Service, Inc. ("UPS"). (ECF No. 43-2 ¶¶ 5–10.) Brewery Plaintiffs have both received direct shipment requests from Maryland residents, but they have denied such requests at least in part because Maryland law

prohibits out-of-state breweries from obtaining the permit required to directly ship such beer to consumers in Maryland.  (ECF No. 43-2 ¶ 8; ECF No. 43-3 ¶¶ 4–5.)

Individual Plaintiff Furlong is a resident of Baltimore County, Maryland, who is over the age of twenty-one and legally permitted to purchase alcohol.  (ECF No. 35 ¶¶ 3, 8; ECF No. 43 ¶¶ 1–2.)  Furlong describes himself as "an aficionado of craft beers [who] desires to purchase special beers that are difficult to locate, including those produced by Brewery Plaintiffs."  (ECF No. 35 ¶ 5; ECF No. 43-4 ¶ 4.)  Furlong claims that he is not able to have such beers shipped or delivered directly to his home because Brewery Plaintiffs are out-of-state beer producers precluded from directly shipping beer to Maryland consumers.  (*Id.*)  Specifically, Furlong has requested direct beer shipment from both Varietal and Vortex, but Brewery Plaintiffs denied his request because of the Maryland laws at issue.  (ECF No. 35 ¶¶ 8, 27; ECF No. 43-3 ¶ 5; ECF No. 43-2 ¶ 8.)  Plaintiffs allege that two Maryland liquor laws, codified in various provisions of Maryland's Alcoholic Beverages and Cannabis Article ("ABC"), unconstitutionally limit their ability access to Maryland's direct-beer-delivery market.

Like many states, Maryland operates a three-tier system to regulate alcohol within its borders.  (ECF No. 43-1 at 12; ECF No. 56 at 4.)  Generally, under this system, alcohol reaches consumers only after it has passed from a producer tier, which includes breweries, wineries, and distilleries; to a wholesaler tier, which includes independent wholesalers; and, finally, through a retailer tier.  (ECF No. 43-1 at 12 n.14.)  The challenged direct-beer delivery regulations originated during the COVID-19 Pandemic in 2020, when then-Governor Lawrence J. Hogan, Jr. ("Governor Hogan"), issued executive orders authorizing alcohol manufacturers licensed in Maryland to ship alcohol directly to consumers in Maryland.  (ECF

No. 53 at 3.)  In 2021, the Maryland General Assembly enacted the Direct Shipping Act of 2021, Md. Laws ch. 359 (SB821), MD. CODE ANN., ABC § 2-219 (2021) (repealed July 1, 2024), which codified portions of Governor Hogan's executive orders.  (ECF No. 53 at 4.)  This 2021 version of the Direct Shipping Act included a one-year sunset provision such that, absent legislative intervention, it would expire on December 21, 2022.  (*Id.*)  The General Assembly twice extended that expiration date before repealing the statute on July 1, 2024.  (*Id.*)

In 2024, however, the General Assembly enacted a new version of the law, Senate Bill 1041 ("SB 1041") or Direct Shipping Act of 2024, which became effective on July 1, 2024. (*Id.*); *see generally* MD. CODE ANN., ABC §§ 2-167–2-175 (Direct-to-Consumer Beer and Liquor Delivery); 2-208 (Class 6 Pub-Brewery License); § 2-209 (Class 7 Micro-Brewery License); 2-210 (Class 8 Farm Brewery License); § 2-211 (residency requirement for manufacturer's licenses); § 2-308 (Class 7 Limited Beer Wholesaler's License).[2]  According to testimony on the Direct Shipping Act of 2024, it was at least in part intended to help brewers meet burgeoning demand for direct-to-consumer beer delivery.  *See* (ECF No. 52-2; ECF No. 52-1); (ECF No. 53 at 3–4 (describing history of direct-to-consumer shipment laws)).  As relevant to the pending motions, the Direct Shipping Act of 2024 includes provisions that (1) prohibit direct-to-home beer delivery by out-of-state beer producers, and (2) require beer producers to deliver beer directly to consumers by their own employees and not by common carriers.

---

[2]  Due to the complex nature of alcohol regulations, Senate Bill 1041 was enacted into law by amending or modifying numerous provisions of Maryland's Alcoholic Beverages and Cannabis Article ("ABC").  For clarity and consistency, the Court collectively refers to the laws enacted as part of Senate Bill 1041 as the Direct Shipping Act of 2024.

### A. Direct Delivery Restriction: Residency Requirements

The Direct Shipping Act of 2024, codified in relevant part at ABC Sections 2-168(a) and 2-169, prohibits out-of-state brewers from delivering beer directly to Maryland consumers but allows in-state brewers to provide such delivery. (ECF No. 43-1 at 2.) The statute achieves this outcome in two steps that collectively impose a residency requirement on breweries seeking to deliver beer directly to Maryland consumers. First, it imposes a permit requirement under which a beer producer may only "deliver[] beer directly to a consumer in the State" if it has "be[en] issued a direct beer delivery permit." MD. CODE ANN., ABC §§ 2-168(a). Second, the statute conditions eligibility for a direct beer delivery permit on licensure as a manufacturer *and* a Class 7 limited beer wholesaler, both of which require Maryland residency. MD. CODE ANN., ABC § 2-169(a)(1); *see also id.* § 2-170(a)(2) (requiring proof of manufacturer's license to obtain direct-delivery permit); *id.* §§ 2-167–2-175 (governing direct-to-consumer beer and liquor delivery); *id.* § 2-211 (imposing residency requirement for manufacturer license).

Thus, a beer producer may only obtain a direct beer delivery permit if that producer also meets the requirements to obtain (1) a license to beer manufacturer in Maryland; *and* (2) a Class 7 beer wholesaler license in Maryland. (*Id.*) Significantly, a beer manufacturer can only obtain a Class 7 beer wholesaler license if they have already obtained a license to manufacture beer. *See* MD. CODE ANN., ABC § 2-308(b) (conditioning Class 7 limited beer wholesaler's license on beer manufacturer licensure). Under ABC Section 2-211, Maryland imposes explicit residency requirements on breweries seeking beer manufacturer licenses:

> *To be issued a manufacturer's license, the following individuals shall reside in the State at the time of filing an application* for the license:
>     (1) for a sole proprietorship, the individual applicant;

> (2) for a corporation or limited liability company, the individual who qualifies as a resident applicant; or
> (3) for a partnership, each partner of the applicant.

MD. CODE ANN., ABC § 2-211 (emphasis added); *see also id.* § 3-102 ("To be issued a manufacturer's license or a wholesaler's license, an individual applicant shall be a resident of the State at the time the application is filed."); *id.* § 3-105(b) (imposing requirement for "license on behalf of a corporation or club" that at least one club officer must "be a resident of the State at the time the application is filed; and . . . remain a resident of the State for the duration of time the license is in effect.").

Moreover, under ABC Section 6-327, Maryland explicitly prohibits out-of-state beer producers from directly shipping beer to consumers in Maryland:

> **(a)(1)** A person in the business of selling or distributing alcoholic beverages in or from another state may not ship, cause to be shipped, or deliver alcoholic beverages directly to a recipient in the State if the seller, distributor, shipper, transporter, or recipient does not hold the required license or permit.
> **(2)** The prohibition under paragraph (1) of this subsection applies to alcoholic beverages ordered or purchased through a computer network.
> **(b)** A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 2 years or a fine not exceeding $1,000 or both.

MD. CODE ANN., ABC § 6-327. Similarly, Maryland law precludes beer producers who hold manufacturer's licenses but not a direct-beer-delivery permits from delivering their products directly to consumers. *Id.* § 2-214.

### B. Direct Delivery Restriction: Employee Delivery Requirement

Finally, a beer producer who has obtained a direct-beer-delivery permit—meaning the producer has obtained a beer manufacturer license and Class 7 beer wholesaler license—may only directly deliver beer via its own employees. *See* MD. CODE ANN., ABC § 2-169(a)(2)(i)

8

("The holder of a direct beer delivery permit issued under § 2-170 of this subtitle may sell and deliver the permit holder's own product to an individual in the State if: (i) the delivery is made by an employee who is . . . at least 18 years old; and . . . certified by an approved alcohol awareness program[.]").  That is, beer producers cannot legally use common carriers to deliver beer directly to consumers in Maryland.  *Id.*  This limitation does not extend to other forms of beer delivery, such as delivery to liquor stores or other wholesalers.

### C.  Procedural History

Original Plaintiffs initiated this action by filing a one-Count Complaint (ECF No. 1) against AG Brown, Director Kelly, and various members of the Maryland Alcohol, Tobacco, and Cannabis Commission ("Original Commission Defendants") challenging the constitutionality of the then-in-effect Direct Shipping Act of 2021, MD. CODE ANN., ABC § 2-219.  Original Defendants filed a Motion to Dismiss (ECF No. 8), which this Court granted as to the Original Commission Defendants but denied as to AG Brown and Director Kelly by Memorandum Order dated March 15, 2024.  *See* (ECF No. 14).  As noted above, the Direct Shipping Act of 2021 was repealed and replaced with the Direct Shipping Act of 2024 on July 1, 2024.  Based on this amendment to the challenged statutes, Plaintiffs filed the operative Amended Complaint (ECF No. 35) against AG Brown and Director Kelly.

Plaintiffs challenge the constitutionality of the Direct Shipping Act of 2024, codified in part at MD. CODE ANN., ABC §§ 2-167–2-175; 2-208–2-211; 2-308, under 42 U.S.C. § 1983 and the Commerce Clause of the United States Constitution, U.S. CONST. art. I § 8, cl. 3.  (ECF No. 35 at 2.)  Plaintiffs allege that specific provisions of the Direct Shipping Act of 2024 violate the Commerce Clause by (1) directly discriminating against out-of-state beer producers

by allowing only in-state beer producers to obtain a permit to deliver beer directly to Maryland consumers (Count I); and (2) discriminating in effect against out-of-state beer producers by requiring licensed beer producers to effectuate direct-to-consumer delivery by their own employees (Count II). *See* (ECF No. 35). Plaintiffs seek a declaratory judgment that the residency requirements and related prohibitions in ABC Sections 2-211, 3-102, 3-105(b), 2-169(a)(1), 2-214, and 6-327 and the employee delivery requirement in ABC Section 2-169(a)(2)(i) are unconstitutional and request an injunction against their enforcement. *See* (*id.* at 9–10); (ECF No. 43-1 at 13–14.)[3] Defendants timely filed their Answer (ECF No. 38), and the parties reported that discovery concluded on October 25, 2024, (ECF No. 42 ). The Court having heard oral argument from the parties at a virtual proceeding and received supplemental briefing as to the pending summary judgment motions, this matter is now ripe for review.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty*

---

[3] Plaintiffs' Amended Complaint does not identify all the statutory provisions to which they seek relief, but their subsequent filings expressly identify those provisions. *Compare* (ECF No. 35 at 8–9) *with* (ECF No. 43-1 at 13–14.) This discrepancy does not affect the Court's authority to address relief as to every relevant statutory provision. *See Holt. Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65–66 (1978) ("Under the Federal Rules of Civil Procedure 'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.' Thus, although the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim." (internal citation omitted) (quoting FED. R. CIV. P. 54(c))).

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *In re French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that trial court may not make credibility determinations at summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility.  *See Tolan v. Cotton*, 572 U.S. 650 (2014).

Where, as here, both parties file motions for summary judgment, this Court applies the same standard of review to both motions, considering "each motion separately on its own

merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)).  "[W]hen cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they '"may be probative of the non-existence of a factual dispute." *Syncrude Can. Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 624 (D. Md. 2013) (quoting *Shook v. U.S.*, 713 F.2d 662, 665 (11th Cir. 1983)).  However, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell*, 21 F.3d at 55 (quoting *Phoenix Sav. & Loan, Inc.*, 381 F.2d at 249).

## ANALYSIS

In their Motion, Plaintiffs contend that they have standing and seek summary judgment as to their challenges to residency- and employee delivery requirements limiting direct-to-consumer beer delivery in Maryland.  (ECF No. 43 at 4–5, 6–13.)  On Cross-Motion, Defendants argue that they have met their burden to demonstrate that the challenged statutes are constitutional components of Maryland's three-tiered alcohol regulation system.  *See generally* (ECF Nos. 52, 53).  The parties contend that their motions address "the purely legal question of the constitutionality of the statutes at issue," (ECF No. 42), and they submit limited record evidence to support their positions.

Indeed, although parties to similar constitutional challenges have submitted dozens of supporting exhibits to accompany summary judgment motions, the parties to this action

provided the Court a total of eight exhibits.[4]  *See, e.g.*, *B-21 Wines, Inc. v. Stein*, 548 F. Supp.3d

555 (W.D.N.C. 2021) (granting summary judgment to state defendant based in part on record

evidence related to challenged statutory scheme); *B-21 Wines Inc. v. Stein*, Civ. No. 3:20-CV-

00099-FDW-DCK, ECF Nos. 27-2; 29-1; 31-1–31-8 (filings showing parties collectively

submitted more than 70 exhibits, including expert reports and deposition testimony, related

to cross-motions for summary judgment); *see also Jean-Paul Weg, LLC v. Graziano*, 2023 WL

5370522, at *3, *9, *12 (D.N.J. Aug. 22, 2023) (discussing record evidence in adjudicating

cross-motions for summary judgment); *Bernstein v. Murphy*, 2:19-cv-14716-JXN-LDW, ECF

Nos. 102 (including 55 exhibits related to summary judgment); 113 (including 7 exhibits related

to summary judgment); 114 (including hundreds of pages of exhibits related to summary

judgment).  Presumably, the dearth of record evidence submitted reflects the parties' belief

that the purely legal issues in question need only minimal factual support for resolution.  As

explained further below, however, the parties present differing legal theories and, based on the

extremely limited record evidence available, neither party has provided the Court sufficient

factual background to evaluate the constitutionality of the challenged statutes at this stage.

## I.    Article III Standing

As an initial matter, Plaintiffs have Article III standing to bring this action.  Article III

of the United States Constitution limits the jurisdiction of federal courts to "Cases" and

"Controversies."  U.S. CONST. art. III, § 2.  "[S]tanding is an essential and unchanging part of

the case-or-controversy requirement of Article III" that gives meaning to these constitutional

---

[4]  The parties submitted three of those exhibits *after* the Court invited supplemental briefing.  *See* (ECF Nos. 60; 62-1; 63-1; 63-2).

limits by "'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  The "irreducible constitutional minimum" of Article III standing requires a plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc., v. Robins*, 578 U.S. 330, 338 (2016).  As "the party seeking to invoke federal jurisdiction," Plaintiffs bear the burden to establish standing.  *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (quoting *Lujan*, 504 U.S. at 561).  In cases involving multiple plaintiffs seeking identical relief, "the Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'"  *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006)); *accord Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).  At the summary judgment stage, plaintiffs "must 'set forth' by affidavit or other evidence 'specific facts,'" to establish standing.  *Swanson Grp. Mfg., LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561)).  In this case, Plaintiffs have met their burden to establish standing as to both Counts.[5]

### A.  Injury In fact

To demonstrate an injury in fact, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent[.]" *Lujan*, 504 U.S. at 560–61 (citations omitted); *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d

---

[5]  Although Defendants asserted lack of standing as an affirmative defense, *see* (ECF No. 38 at 9), they do not respond to Plaintiffs' standing arguments at this summary judgment stage.

649, 653 (4th Cir. 2019). Where a plaintiff seeks declaratory and injunctive relief, he "must establish an *ongoing or future* injury in fact," and "may not rely on prior harms." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 230 (4th Cir. 2019) (emphasis in original) (citations omitted). Discrimination against interstate commerce forms a constitutionally cognizable injury both to the class of producers subject to the discrimination *and* to the consumers who seek to access that class of producers. *See Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (holding in-state consumers' inability to "drink [wines that] are not carried by [in-state] resellers" was injury under Article III (quoting *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849 (7th Cir. 2000)); *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997) ("[C]ognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured . . . ."). A state discriminates against interstate commerce both by directly preventing out-of-state producers from accessing an in-state market and by burdening or complicating access to an in-state market. *See, e.g.*, *Granholm v. Heald*, 544 U.S. 460 (2005) (deeming unconstitutionally discriminatory state statutes that wholly prevented out-of-state wineries from shipping directly to in-state consumers and that imposed additional burdens on out-of-state wineries seeking to ship directly to in-state consumers).

In this case, Plaintiffs have raised cognizable injuries under both Counts by asserting that Maryland's manufacturing licensure scheme, direct-beer-delivery permit, explicit prohibition on direct beer delivery by out-of-state producers, and employee delivery requirement explicitly and implicitly prevent them from participating equally in Maryland's direct-beer-delivery market. *See* (ECF No. 43-2 (Varietal affidavit); ECF No. 43-3 (Vortex

affidavit)); *Gen. Motors Corp.*, 519 U.S. at 286.  Furlong has met his burden to establish standing as an individual Maryland resident who has been unable to receive direct shipments of beer from out-of-state breweries.  *See* (ECF No. 43-4 (Furlong affidavit)); *Freeman*, 629 F.3d at 154. Varietal has shown it has standing under Count II by asserting that even if it could obtain a direct-beer-delivery permit, the employee delivery requirement would render use of that permit infeasible.[6]  (ECF No. 43-2 ¶ 10; ECF No. 43-1 at 1.)  Finally, Plaintiffs have shown that these harms remain ongoing by their affidavits that (1) they are subject to the Direct Shipping Act of 2024 currently in effect; (2) they have not participated in the direct beer shipping market—either as producers or, as to Furlong, as a potential consumer of beer from out-of-state producers—because of the Direct Shipping Act; and (3) they would do so if they were not subject to the Direct Shipping Act of 2024.  (ECF No. 43-2 ¶ 8–11; ECF No. 43-3 ¶¶ 4–9; ECF No. 43-4 ¶¶ 6–11.)

## B. Traceability & Redressability

To confer standing, an alleged injury "has to be fairly . . . trace[able] to the challenged action of the defendant" rather than "the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (alteration in original) (citation omitted).  In this case, Plaintiffs' injuries are directly traceable to the challenged statutes because it is undisputed in the record that Furlong and Brewery Plaintiffs would be participating in Maryland's direct beer delivery market absent the challenged statutes.  *See* (ECF No. 43-2 ¶¶ 5–11; ECF No. 43-3 ¶¶

---

[6]  As noted above, where multiple plaintiffs seek identical relief, only one plaintiff needs to establish standing as to each claim.  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 216–17 (4th Cir. 2017) (collecting cases). Accordingly, the Court reaches no conclusions as to the standing of Furlong and Vortex as to Count II, except to conclude that Varietal has established sufficient injury in fact under Count II.

3–9; ECF No. 43-4 ¶¶ 5–11).  As Judge Hurson of this Court recently explained, "[d]eclaratory and injunctive relief are appropriate to redress ongoing or future harm."  *Jensen v. Md. Cannabis Admin.*, 719 F. Supp. 3d 466, 476 (D. Md. 2024).  In this case, Plaintiffs seek declaratory and injunctive relief that would redress their injuries by (1) declaring unconstitutional the challenged statutes; and (2) enjoining enforcement of the challenged statutes.  *See, e.g.*, *Beskind v. Easley*, 197 F. Supp. 2d 464, 476 (W.D.N.C. 2002) *vacated in part on other grounds* 325 F.3d 506 (4th Cir. 2003) (granting declaratory and injunctive relief against State in challenge to its liquor laws under Commerce Clause).  Accordingly, Plaintiffs have met their burden to establish Article III standing, and the Court turns to summary judgment as to the merits.

## II.    Constitutionality of Challenged Statutes

This action invokes the interplay between two distinct provisions of the United States Constitution: the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, and the Twenty-First Amendment, U.S. CONST. amend. XXI § 2.  Plaintiffs contend that they are entitled to summary judgment because Defendants have not met their burden to justify the facially discriminatory residency requirement and facially neutral ban on common carrier shipping methods contained in the Direct Shipping Act of 2024.  (ECF No. 43 at 9–14.)  Accordingly, Plaintiffs assert that both restrictions unconstitutionally discriminate against out-of-state breweries and in-state consumers like Furlong in violation of the Commerce Clause.  (*Id.* at 7–9.)  On cross-motion for summary judgment, Defendants contend that these requirements are justified as essential components of Maryland's system of regulating alcohol as permitted under the Twenty First Amendment.  (ECF No. 53 at 8–16.)

17

The Commerce Clause of the United States Constitution affords Congress broad authority "to regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." U.S. CONST. art. I, § 8, cl. 3. Under the dormant Commerce Clause doctrine, the Supreme Court has long held that the implied inverse of the Commerce Clause is a nondiscrimination principle that "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirit Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). The dormant Commerce Clause acts "as the primary safeguard against state protectionism" by generally prohibiting state regulations that benefit in-state economic interests by burdening out-of-state economic interests. *Id.* at 517; *Granholm*, 544 U.S. at 472. Prohibited differential treatment includes facially discriminatory laws *and* "facially neutral laws that place[] an impermissible burden on interstate commerce." *Tenn. Wine*, 588 U.S. at 518 (quoting *Granholm*, 544 U.S. at 477). Ordinarily, the dormant Commerce Clause doctrine demands that states justify discriminatory laws under strict scrutiny. *Id.* at 518 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008)). Where a law regulates alcohol, however, the Supreme Court has slightly relaxed the dormant Commerce Clause analysis in deference to states' authority to regulate alcohol under the Twenty-First Amendment to the United States Constitution.

Section Two of the Twenty-First Amendment provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI § 2. The Supreme Court has explained that Section Two affords states broad authority to regulate alcohol within their borders, but "the aim of § 2 was not to give States a free hand to restrict the importation of alcohol for purely protectionist purposes."

18

*Tenn. Wine*, 588 U.S at 531.  Section 2 thus "allows each State leeway to enact the measures that its citizens believe are appropriate to address the public health and safety effects of alcohol use and to serve other legitimate interests, but it does not license the States to adopt protectionist measures with no demonstrable connection to those interests."  *Id.* at 538.

To evaluate the constitutionality of alcohol regulations, therefore, courts balance the Commerce Clause and the Twenty First Amendment by asking "whether the principles underlying the Twenty-First Amendment are sufficiently implicated by the [discriminatory regulation] . . . to outweigh the Commerce Clause principles that would otherwise be offended."  *Id.* at 532 (quoting *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 275 (1984)).  This balancing test mandates a two-step inquiry in which a court asks: (1) "whether the challenged regime discriminates against interstate commerce," and, if so, (2) "whether the challenged [regime] can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground."  *B-21 Wines v. Bauer*, 36 F.4th 214, 222 (4th Cir. 2022) (alteration in original) (quoting *Tenn. Wine*, 588 U.S. at 539).  Under the second step, a state may justify its statute either by showing that the challenged statutes are "an essential feature" of its alcohol regulation system *or* by offering "concrete evidence" that it "actually promotes public health or safety" or a legitimate, non-protectionist interest.  *Tenn. Wine*, 588 U.S. at 535, 540; *B-21 Wines*, 36 F.4th at 227–229, 229 n.10, 227, n.8 (citing *Tenn. Wine*, 588 U.S. at 540).

Crucially, Defendants bear the ultimate burden to demonstrate the constitutionality of the challenged statutes under this constitutional framework.  *Granholm*, 544 U.S. at 492.  Accordingly, Plaintiffs are entitled to summary judgment only where they demonstrate that no evidence exists to allow Defendants to justify the challenged regime as a matter of law.  *See*

*Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024) ("Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Relatedly, Defendants are entitled to summary judgment only where they demonstrate that they are entitled to judgment as a matter of law because they have sufficiently justified the statutory scheme. *See id.* at 174; *Celotex Corp.*, 477 U.S. at 325. Put differently, Defendants may obtain summary judgment by proving that they have satisfied *one* of the two methods of justifying a purportedly discriminatory statute under the Twenty-First Amendment, while Plaintiffs may obtain such relief only by showing that Defendants cannot justify the challenged statutes under *either* method.

### III.    Inappropriateness of Summary Judgment

Although the parties appear to agree that there exist no genuine disputes of material fact, (ECF No. 43 at 1; ECF No. 52 at 1), they have not provided this Court sufficient factual background to allow complete evaluation of the remaining legal claims. As the Fourth Circuit has repeatedly emphasized, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where a motion for summary judgment presents a question of law, Judge Hollander of this Court has observed that denial of the motion is appropriate where the movant has not "demonstrated a clear

entitlement to judgment in its favor as a matter of law." *Haskins v. Hawk*, Civ. No. ELH-11-2000, 2013 WL 1314194, at *23 (D. Md. Mar. 29, 2013) (quoting *King v. Gov't Emps. Ins. Co.*, 843 F. Supp. 56, 56 (D. Md. 1994)); *see also Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 392 (D. Md. 2011). Moreover, "[e]ven where summary judgment is appropriate on the record so far made in a case, a court may properly decline, for a variety of reasons, to grant it." *Forest Hills Early Learning Ctr., Inc. v. Lukhard*, 728 F.2d 230, 245 (4th Cir. 1984).

One such reason for declining to grant summary judgment despite an absence of genuinely disputed material facts is an underdeveloped record. *See Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir. 2009). That is, "[a]n appraisal of the legal issues may lead a court to exercise its discretion and deny summary judgment in order to obtain the fuller factual foundation afforded by a plenary trial." *Pressly v. United States*, 172 Fed. Cl. 264, 267–68 (Fed. Cl. 2024) (quoting 10A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 2728 (4th ed. 2016)); *see also George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 424 F.2d 25, 35 (1st Cir. 1970) *cert. denied* 400 U.S. 850 (1970) (noting court's discretion to deny summary judgment where "the parties have failed to clarify the underlying facts"). Accordingly, despite "the general rule . . . that difficult legal issues do not preclude summary judgment, . . . difficult or complicated legal issues should not be adjudicated upon an inadequate record." Wright & Miller, *supra* § 2728; *see, e.g., Askew v. Hargrave*, 401 U.S. 476 (1971) (observing that pleadings and one affidavit constituted insufficient factual basis for summary judgment); *Anderson v. Hodel*, 899 F.2d 766, 770–71 (9th Cir. 1990) (collecting cases). Denial of summary judgment may be especially appropriate where the parties present an underdeveloped record and seek "a declaratory judgment at the summary judgment stage." *See Guardian News & Media LLC v.*

*Ryan*, 225 F. Supp. 3d 859, 872 (D. Ariz. 2016) (collecting cases); *see also Bingham Ltd. v. United States*, 724 F.2d 921, 924–26 (11th Cir. 1984) (holding cross-motions for summary judgment in action for declaratory relief should have been denied due to "inadequacy of the factual [record] despite the absence of a genuine issue as to a material fact").

In this case, both parties have moved for summary judgment on the basis that there exist no genuine disputes of material fact and the constitutionality of the challenged statutes presents a "purely legal question." (ECF No. 42); *see also* (ECF No. 43; ECF No. 52). Specifically, both parties appear to agree that the challenged statutes are discriminatory in nature, such that the only remaining inquiry is whether Defendants have shown such discrimination is justified under the Twenty-First Amendment. *See* (ECF No. 43 at 7–14); (ECF No. 53 at 6–16). Such justification requires Defendants to prove either that concrete evidence shows the law supports legitimate non-protectionist interests such as public health and safety *or* that the challenged statutes are integral to the preservation of the state's three-tiered alcohol regulation system. In this case, Defendants assert that the statute is essential to their three-tiered alcohol regulation system, or, alternatively, serves public health and safety interests related to the provision and consumption of alcohol in Maryland. *See generally* (ECF Nos. 53, 57, 62). Plaintiffs contend that Defendants have not presented sufficient evidence to justify the statute under either method. (ECF No. 43-1 at 9–13; ECF No. 56 at 4–5; ECF No. 63 at 5–11.)

Certainly, the ultimate question of the constitutionality of a statute is a legal inquiry. *B-21 Wines*, 36 F.4th at 221 (citing *Miller v. Brown*, 503 F.3d 360, 364 (4th Cir. 2007)). Like most legal inquiries, however, that question depends on some baseline factual foundation. Yet,

despite initial briefing, oral argument, and supplemental briefing at the Court's request, the parties have not provided such a factual foundation. *See* (ECF Nos. 43, 52, 53, 56, 57, 62, 63.) As noted above, the parties have submitted to the Court just eight exhibits. *See* (ECF Nos. 63-1, 63-2, 62-1, 52-1, 52-2, 43-2, 43-3, 43-4.) Only one of these exhibits—the affidavit of Director Kelly (ECF No. 62-1), which Defendants submitted after the Court requested additional briefing at oral argument—offers factual detail about the administration of Maryland's three-tiered system to regulate alcohol.[7]

On this limited record, neither party has provided a clear factual foundation to inform the constitutionality of the challenged statutes, such as: (1) the functioning and administration of Maryland's three-tiered statutory scheme; (2) comparisons between Maryland's three-tiered statutory scheme and those of other states; (3) information regarding whether Maryland weighed alternative options to regulate direct shipment of beer; and (4) information regarding the administration of the challenged direct-beer-delivery permits as a limited retail component of a manufacturer's license or as a direct component of Maryland's scheme for regulating alcohol manufacturers. Indeed, the Supreme Court and federal Courts of Appeal have deemed

---

[7] Plaintiffs object to and dispute the admissibility of this affidavit both on the basis that it was not disclosed in discovery and on the basis that Defendants waived any public safety defense by failing to raise it during pretrial motions. (ECF No. 63 at 1–4.) As outlined above, justification under the Twenty-First Amendment is an affirmative defense to the assertion that a state violated the dormant Commerce Clause doctrine. *See Bainbridge v. Turner*, 311 F.3d 1104, 1111 n.13 (11th Cir. 2002) ("The state's reliance on the Twenty-First Amendment constitutes an affirmative defense within the meaning of Rule 8(c) of the Federal Rules of Civil Procedure, in that from a procedural point of view, the State is treated as seeking to 'avoid' the Commerce Clause violation."); *see also Granholm v. Heald*, 544 U.S. 460, 492 (2005) (explaining the "burden is on the State to show that 'the *discrimination* is demonstrably justified'" (emphasis in original) (quoting *Chem. Waste Mgmt. v. Hunt*, 504 U.S. 334, 344 (1992)). The State has not waived the affirmative defense of justification under the Twenty-First Amendment because it asserted that defense in its Motion to Dismiss (ECF No. 8). *See* (ECF No. 8 at 1; ECF No. 8-1 at 3, 8–13). To the extent the parties dispute the admissibility of evidence or arguments related to specific theories within that affirmative defense, they may litigate such admissibility in pretrial motions *in limine*. At this time, therefore, the Court makes no determinations regarding waiver of (1) specific theories within the Twenty-First Amendment defense, or (2) specific proffered evidence.

such information useful in adjudicating similar challenges.[8] *See, e.g.*, *Granholm*, 544 U.S. at 474–75 (citing both statutes and record evidence to describe challenged statutes and their effect); *id.* at 490 (noting lack of evidence regarding purported public safety concerns and citing record evidence regarding ability to protect public health via nondiscriminatory alternative); *Tenn. Wine*, 588 U.S. at 535 (citing record evidence regarding how many states imposed restrictions like challenged scheme); *Jean-Paul Weg LLC v. Dir. Of N.J. Div. of Alcoholic Beverage Control*, 133 F.4th 227, 237–38 (3d Cir. 2025) (emphasizing record evidence before reaching issue of whether challenged statute was "essential" feature of state's three-tier system).

Absent such information, this Court cannot fully evaluate whether Defendants can demonstrate that the challenged statutes serve a public health and safety interest or are otherwise essential to Maryland's three-tiered alcohol regulation scheme. In recognition of the weighty constitutional and public policy concerns at issue, the Court deems it prudent to allow both parties the benefit of creating a full evidentiary record. *Lukhard*, 728 F.2d at 245; *see also Long v. D.C. Hous. Auth.*, 166 F. Supp. 3d 16, 29–31 (D.D.C. 2016) (denying cross-motions for summary judgment "in light of the policy and public interest concerns raised by both sides" and inadequate briefing of issue); *Lane v. Cacace*, 2025 WL 903766, at *9–*10 (S.D.N.Y. Mar. 25, 2025) (denying summary judgment due to inadequate record); *Tel. Operating Systs., Inc. v. People's Tel. Co., Inc.*, 831 F. Supp. 840, 843 (S.D. Fla. 1993) ("Furthermore, where the legal issues can be intelligently resolved only upon a more fully developed record, 'an

---

[8] Although Defendants emphasize that the Fourth Circuit in *B-21 Wines* did not cite to record evidence, (ECF No. 57 at 4), the Fourth Circuit had the benefit of more than 70 exhibits submitted together with the parties' cross-motions for summary judgment in that case. *See B-21 Wines Inc. v. Stein*, Civ. No. 3:20-CV-00099-FDW-DCK, ECF Nos. 27-2; 29-1; 31-1–31-8. That is, even if the Fourth Circuit concluded that it did not need to cite record evidence, it still had access to that evidence to form a factual foundation upon which to decide the constitutional inquiry at issue.

appraisal of the legal issues may lead a court to exercise its discretion and deny summary judgment in order to obtain the fuller factual foundation afforded by a plenary trial.'" (citations omitted)).[9]    Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 43) is DENIED, and Defendants' Cross-Motion for Summary Judgment (ECF No. 52) is DENIED.

    A separate order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: August 4, 2025

---

[9] Trial courts have discretion to order additional briefing of issues not adequately addressed. *See, e.g.*, *Long*, 166 F. Supp. 3d at 28.  In this case, however, this Court has already heard argument and invited supplemental briefing.  *See* (ECF No. 60, 61, 62, 63.)  The prudent course of action now is to proceed to a bench trial.