IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DOUGLAS J. FURLONG, <br> VARIETAL BEER COMPANY, <br> VORTEX BREWING, CO., LLC <br><br> *Plaintiffs*, <br><br> v. <br><br> THE HON. ANTHONY G. BROWN, <br> *Attorney General of Maryland*, <br> JEFFREY A. KELLY, <br> *Executive Director, Maryland Alcohol, Tobacco,* <br> *& Cannabis Commission* <br><br> *Defendants*. | * <br> * <br> * <br> * <br> *   Civil Action No. RDB-23-2045 <br> * <br> * <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

In this action for declaratory and injunctive relief under 42 U.S.C. § 1983, individual Maryland resident Douglas J. Furlong, and two out-of-state breweries, Varietal Beer Company ("Varietal"), and Vortex Brewing Company, LLC ("Vortex") (collectively, "Plaintiffs") challenge the constitutionality under the Commerce Clause of the United States Constitution, Art. I. § 8 cl. 3, of Maryland laws that limit out-of-state breweries' ability to deliver beer directly to consumers in Maryland. *See generally* MD. CODE ANN., ABC §§ 2-167–2-175; 2-208; § 2-209; 2-210; § 2-211; § 2-308. Plaintiffs initiated this action on July 31, 2023, and, on June 27, 2024, filed the operative, two-Count Amended Complaint against Defendants Anthony G. Brown, in his official capacity as Attorney General of Maryland ("AG Brown") and Jeffrey A. Kelly, in his official capacity as the executive director of the Maryland Alcohol, Tobacco, and Cannabis Commission ("Mr. Kelly") (collectively, "Defendants"). *See* (ECF No. 35). In their

Amended Complaint, Plaintiffs allege a Commerce Clause violation for discriminatory delivery privileges based on a provision of Maryland's Direct Shipping Act of 2024 ("Direct Shipping Act") that imposes residency requirements for direct-to-consumer beer delivery permits (Count I); and a Commerce Clause violation for the discriminatory effect of the provision of the Direct Shipping Act that requires that direct-to-consumer delivery of beer occur via producers' employees and not via common carrier (Count II). (*Id.*) By Memorandum Opinion and Order dated August 4, 2025, this Court denied the parties' cross-motions for summary judgment. (ECF Nos. 64, 65.) This case is set for a bench trial beginning December 8, 2025. *See* (ECF No. 70).

Presently pending before this Court are two motions *in limine* filed by the parties: (1) Plaintiffs' Amended Motion *in Limine* to Exclude Defendants' Evidence (ECF No. 84) ("Plaintiffs' Amended Motion"); and (2) Defendants' Amended Motion *in Limine* to Exclude Certain Testimony of Plaintiffs' Expert Jim Kuhr (ECF No. 78) ("Defendants' Amended Motion").[1] Defendants have responded in Opposition (ECF No. 85) to Plaintiffs' Amended Motion, and Plaintiffs have replied (ECF No. 87). Similarly, Plaintiffs have responded in Opposition (ECF No. 82) to Defendants' Amended Motion, and Defendants have replied (ECF No. 88). The parties' submissions have been reviewed, and the Court heard oral argument from the parties at a motions hearing held November 7, 2025. For the reasons set

---

[1] Also pending before this Court are Plaintiffs' original Motion *in Limine* to Exclude Expert Testimony (ECF No. 75) and Defendants' original Motion *in Limine* to Exclude Certain Testimony of Plaintiffs' Expert Jim Kuhr (ECF No. 76). Both parties filed their Amended Motions *in Limine* by consent, and both Amended Motions are identical to the relevant original motion except as to the issue of timeliness of expert disclosures. Both parties agree, however, that their expert disclosures were timely pursuant to their written stipulation. Accordingly, the original Motions *in Limine* (ECF Nos. 75, 76) are denied as MOOT because they are superseded by the Amended Motions *in Limine* (ECF Nos. 78, 84) discussed herein.

forth on the record and expounded further below, Plaintiffs' Amended Motion *in Limine* (ECF No. 84) is GRANTED IN PART and DENIED IN PART, and Defendants' Amended Motion *in Limine* (ECF No. 78) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This Court has previously recounted the facts underlying this action, *see* (ECF No. 64), and only those facts necessary for the disposition of the pending motions *in limine* are included below.

### I.  Defendants' Experts

Defendants proffer William C. Kerr, Ph.D. ("Dr. Kerr") as an expert witness and Defendant Jeffrey A. Kelly ("Mr. Kelly") as a hybrid fact/expert witness.[2] (ECF No. 75 Ex. A at 2.) Dr. Kerr's expert report provides information regarding how "Maryland's direct beer delivery law promotes the health and safety of Maryland's consumers and other legitimate state interests." *See generally* (*id.* at 7–35.) Dr. Kerr is an economist who serves as Senior Scientist and Scientific Director of the Public Health Institute's Alcohol Research Group. (*Id.* at 9 ¶ 1.) The Public Health Institute is a non-profit health, equity, and wellness organization that conducts research. (*Id.*) His report includes opinions regarding the purpose of Maryland's three-tier system, the purpose and scope of the challenged statutes, the economic impacts of

---

[2] On the record at the motions hearing, Defendants conceded that Mr. Kelly is a fact witness only. Accordingly, for the reasons stated on the record and expounded below, Mr. Kelly is permitted to testify as a lay person except as to Paragraph 13 of his Declaration (ECF No. 62-1). He is not free to testify as to the opinions offered in Paragraph 13 of his Declaration and, as the Court cautioned Defendants on the record, Mr. Kelly is not free to opine regarding jurisdiction, other states' inspection frameworks, or general legal analysis.

3

the statutes and limited alcohol delivery, and the negative effects of direct delivery of beer by out-of-state manufacturers. (*Id.* at 10–13).

As to Mr. Kelly, Defendants note that he is currently Executive Director of the Maryland Alcohol, Tobacco, and Cannabis Commission ("ATCC"),[3] between 2008 and 2021 served a similar function as Director of the Field Enforcement Division of the Office of the Maryland Comptroller ("Comptroller"), between 2002 and 2008 served in enforcement roles with the Comptroller, and before 2002, served for seventeen years as an Anne Arundel County police officer. (*Id.* at 2–3.) Defendants disclose that Mr. Kelly will testify regarding (1) Maryland's three-tier system of alcohol regulation and how it serves public health and safety and tax collection in Maryland; (2) the law enforcement and regulatory roles of the ATCC, Comptroller, and local alcohol beverage boards in regulating manufacturers, wholesalers, and retailers; (3) the importance of unannounced, warrantless inspections of manufacturers; (4) Maryland's direct beer delivery laws; (5) the Comptroller's 2010 Direct Wine Shipment Report to the Maryland General Assembly, which conveyed that underage drinkers often choose beer and spirits over wine; and (6) the potential adverse consequences of allowing direct delivery by out-of-state beer manufacturers. (*Id.* at 2–3.)

## II.    Plaintiffs' Expert

Plaintiffs proffer expert testimony from Jim Kuhr ("Mr. Kuhr"), "owner of Catalyst Beverage Consulting, LLC, [located in Iowa]. . ., which offers brewing consulting services to the public and to breweries around the country." (ECF No. 78 Ex. A at 16 ¶ 1.)  Mr. Kuhr

---

[3] Defendants represent that the ATCC was created in 2021 such that it did not exist prior to 2021. (ECF No. 75 Ex. A. at 2–3.)

bases his testimony on his personal knowledge and experience, including experience in "industrial scale and craft beer, brewing, packaging, fermentation, blending, product development, quality assurance, food safety, occupational safety, sustainability, and project management." (*Id.* ¶ 2.) He bases his "opinions on [his] 41 years of hands-on experience with beer, breweries, beer delivery and shipping systems, state and federal alcohol regulators, and a broad variety of beer industry practices, on the Kelly statement, and on information supplied to [him] about the facts of the present case." (*Id.* at 20 ¶ 11.) He states that he is serving as an expert witness in this case "to share [his] expertise in food safety as it pertains to the manufacturing and transportation of beer." (*Id.* at 17.)

Mr. Kuhr represents that his "expertise ranges from quality, brewhouse, and cellar operations, process improvement, product development, packaging management, occupational and food safety, supply chain, and systems commissioning and optimization." (*Id.* ¶ 3.) His resume indicates membership in numerous professional associations, receipt of three awards between 2013 and 2019, and several publications with which he is associated. (*Id.* ¶¶ 4, 5, 6; ECF No. 78 Ex. B at 22–24.) He has worked in various capacities for breweries, brewing associations, and beverage manufacturing and development since 1984 and holds a Bachelor of Science degree in Business Administration & Management and an associate's degree in business. (ECF No. 78 Ex. B. at 23.)

## STANDARD OF REVIEW

A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). The purpose of a motion *in limine* is "to aid the trial process by enabling the Court to rule in

5

advance of trial on the relevance of certain forecasted evidence." *United States v. Slagle*, SAG-15-392, 2015 WL 5897740, at *1 (D. Md. Oct. 6, 2015) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)); *see Osei v. Univ. of Md. Univ. Coll.*, 202 F. Supp. 3d 471, 479 n.5 (D. Md. 2016) ("[M]otions *in limine* are meant 'to streamline the case for trial and to provide guidance to counsel [and the parties] regarding evidentiary issues.'") (quoting *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001)), *vacated and remanded on other grounds*, 710 F. App'x 593 (4th Cir. 2018).

Evidentiary rulings prior to trial are generally preliminary or tentative, made in the discretion of the court, for the purpose of assisting in preparation for trial. *Luce*, 713 F.2d at 1239–40; *see Adams*, 141 F. Supp. 2d at 558 ("A ruling on a motion *in limine* is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court."). When the evidence is actually offered at trial, the trial court may change its ruling. *Luce*, 713 F.2d at 1239. Additionally, "[a] district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)).

## ANALYSIS

### I. Plaintiffs' Amended Motion *in Limine* (ECF No. 84)

In their Amended Motion, Plaintiffs seek to exclude the testimony of Defendants' experts on several bases. First, they renew their argument that testimony from Defendants' experts on the issue of public health and safety should be excluded because Defendants waived any affirmative defense of public health and safety by failing to (1) raise it in the pleadings; and (2) disclose public health and safety evidence. (ECF No. 84-1 at 1–4.) Alternatively, they

contend that any expert testimony must be limited to (1) to whether facts and data show that beer from out-of-state manufacturers poses an actual threat of being unfit for public consumption; and (2) to exclude legal opinions and areas beyond the scope of Dr. Kerr's expertise. (*Id.* at 4–7.) As explained further below and on the record at the motions hearing, Plaintiffs' Amended Motion (ECF No. 84) is GRANTED IN PART and DENIED IN PART.

### A. Defendants have not waived any public health and safety defense

As explained on the record, Defendants have not waived any public health and safety defense under the Twenty-First Amendment. As an initial matter, it is not clear that "public health and safety" is an affirmative defense distinct from the Twenty-First Amendment. The Supreme Court has explained that Section 2 of the Twenty-First Amendment "gives each State leeway in choosing alcohol-related public health and safety measures that its citizens find desirable[.]" *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 510 (2019). Even assuming that "public health and safety" is a distinct affirmative defense, however, as stated on the record and explained further below, Defendants have not waived such defense.

An affirmative defense is not waived if asserted in pre-trial dispositive motions, including at summary judgment. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (collecting cases) *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003). Indeed, "it is well established that an affirmative defense is not waived absent unfair surprise or prejudice." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 n.3 (4th Cir. 2004). As Judge Hollander of this Court has explained,

> Notably, "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" *Grant v. Preferred Research, Inc.*, 885 F.2d 795,

7

> 797 (11th Cir. 1989) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)). Moreover, "[t]o avoid the inequitable results of a waiver, a court may interpret defendant's responses liberally, may permit an affirmative defense when its existence is made apparent by a party's proof, and may permit amendments to the pleadings under Rule 15 . . . ." *Tenax Corp. v. Tensar Corp.*, H-89-424, 1990 WL 152565, at *7 (D. Md. May 31, 1990) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 588 F. Supp. 902, 906 (D. Md. 1984)).

*McCall-Scovens v. Blanchard*, Civ. No. ELH-15-3433, 2016 WL 6277668, at *4 (D. Md. Oct. 27, 2016).

In this case, this Court determined in its Memorandum Opinion (ECF No. 64-1) denying summary judgment that "[t]he State has not waived the affirmative defense of justification under the Twenty-First Amendment because it asserted that defense in its Motion to Dismiss (ECF No. 8). *See* (ECF No. 8 at 1; ECF No. 8-1 at 3, 8–13)." (ECF No. 64-1 at 23 n.7.) Even assuming, *arguendo*, that the assertion of the Twenty-First Amendment in Defendants' Motion to Dismiss (ECF No. 8) was insufficient to raise a public health and safety defense, Defendants also raised a Twenty-First Amendment analysis in their Cross-Motion for Summary Judgment. *See* (ECF No. 53 at 2, 6–8, 8–14). That is, Defendants raised a public health and safety defense *at the latest* in their summary judgment filing on January 10, 2025. (ECF No. 53.)

As explained on the record, Plaintiffs have not established that they have suffered any prejudice or unfair surprise because Defendants, at the latest, raised public health and safety in January 2025. Indeed, Plaintiffs had ample time to prepare for arguments and marshal evidence between Defendants' summary judgment filing in January 2025 and the summary judgment hearing on June 2, 2025, and they still have time to marshal additional evidence before the December 2025 bench trial. *See, e.g.*, *U.S. Cold Storage, Inc. v. City of Lumberton*, 34 F.

8

App'x 429, 435 (4th Cir. May 2, 2002) (unpublished) (finding no prejudice where defendant raised defense for the first time at summary judgment but plaintiff had "almost a month to prepare its reply, and five additional months to prepare for oral argument"); *see also Grunley Walsh U.S., LLC v. Raap*, 386 F. App'x 455, 459–60 (4th Cir. 2010) (unpublished) (finding no prejudice where Court raised issue at summary judgment hearing); *accord Wellin v. Wellin*, 430 F. Supp. 3d 84, 92 (D.S.C. 2019) (finding plaintiff had ample time to respond to defense raised at summary judgment stage such that no unfair surprise resulted). Moreover, at the summary judgment hearing on June 2, 2025, this Court pursuant to Federal Rule of Procedure 56(e) requested supplemental briefing as to Defendants' justifications for the Direct Shipping Act, and specifically as to evidence regarding licensure and public health and safety. *See* (ECF No. 61 at 26:23–28:9 (Court attempting to clarify licensure scheme and Defendants representing that all licensed parties are "subject to inspection . . . the ATCC"); 28:10–30:18 (Court suggesting papers are deficient as to evidence of public health and licensure); 30:19–40:21 (parties agreeing to further briefing, Plaintiffs arguing Defendants did not meet their evidentiary burden, Defendants asserting no fact evidence is needed).) Defendants then produced the declaration of Mr. Kelly with their supplemental briefing, (ECF No. 62, 62-1), on July 2, 2025.

In total, therefore, Plaintiffs had six months to prepare for the summary judgment hearing, another six weeks to respond to supplemental briefing, and, following this Court's denial of summary judgment on August 4, 2025, nearly three months to prepare pretrial motions, *see* (ECF Nos. 67, 70, 74). Even acknowledging that Defendants bear the burden of proof such that some of Plaintiffs' evidence must respond to Defendants' evidence, nine

9

months is ample time to marshal public health evidence such that Plaintiffs have not established that they suffered prejudice or unfair surprise due to any delayed affirmative defense of public health or safety. *See U.S. Cold Storage, Inc.*, 34 F. App'x at 435; *Brinkley*, 180 F.3d at 612. Thus, as stated on the record and explained above, Defendants have not waived any public health and safety defense.

### B. Mr. Kelly is a lay witness and not an expert witness

On the record at the motions hearing, both parties agreed that Mr. Kelly, who is a named defendant in this matter, is a lay witness. Accordingly, his testimony is not subject to scrutiny under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), or *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), which govern only expert testimony. As all parties agreed on the record, Mr. Kelly's proposed testimony in Paragraphs 1–12 of his Declaration (ECF No. 62-1) constitutes admissible lay testimony.[4] As stated on the record, however, Paragraph 13 of Mr. Kelly's Declaration offers opinions as to which he is not qualified to testify. Accordingly, as explained on the record, Plaintiffs' Amended Motion *in Limine* (ECF No. 84) is GRANTED as to Paragraph 13 of Mr. Kelly's Declaration, which shall be excluded. The Amended Motion is DENIED to the extent it seeks to exclude any other portion of Mr. Kelly's lay testimony.

### C. Experts are not permitted to provide legal opinions

Relatedly, as all parties agreed on the record, experts are not permitted to offer legal opinions. As the Fourth Circuit has recognized, "[e]xpert testimony on an ultimate issue

---

[4] Plaintiffs objected to the last sentence of Paragraph 12 of Mr. Kelly's Declaration but otherwise agreed that the rest of Paragraph 12 and Paragraphs 1–11 constitute lay testimony.

10

is . . . excludable under Rule 702 if it does not aid the jury" and "testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). Therefore, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, 90 F.4th 217, 234 (4th Cir. 2024) (quoting *United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006)). To the extent any party's expert purports to offer legal opinions at trial, therefore, such testimony will be excluded.

### D. Dr. Kerr's testimony will be limited in part

As noted above, Dr. Kerr is an economist who has conducted research regarding various states' public- and economic policies pertaining to alcohol. As the parties agreed on the record, Dr. Kerr's proposed expert testimony generally relates to three categories of public health and safety: (1) pure public health concerns; (2) broader public health and safety concerns; and (3) taxation and economic effects of alcohol regulations as related to public health. Some of the proposed expert testimony in Dr. Kerr's report, however, pertains to broad sociological risks or concerns of alcohol consumption, including drunk driving, alcohol-involved crimes, risky sexual behavior, and productivity loss. *See* (ECF No. 75-2 at 7–8).

The proponent of expert testimony bears the burden of proof in establishing its admissibility under Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

11

>  (c) the testimony is the product of reliable principles and methods; and
>  (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702; *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). "In assessing the admissibility of expert testimony, a district court assumes a 'gatekeeping role' to ensure that the 'testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Pracs. and Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

In a bench trial, "the trial court's gatekeeping function is much less critical ... because there [is] 'little danger' of prejudicing the judge, who can, after hearing the expert's testimony or opinion, determine what, if any, weight it deserves." *Federal Trade Commission v. DIRECTV, Inc.*, 2017 WL 412263, at *2 (N.D. Cal. Jan. 31, 2017); *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013) ("[B]ecause the district court was also the trier of facts, the district court's evidentiary gatekeeping function was relaxed . . . ."). Nonetheless, expert testimony must meet the requirements of Rule 702, *Daubert*, and *Kumho Tire*. FED. R. EVID. 702 advisory committee's notes to 2023 amendments. For expertise based on professional studies or experience, the court must "make certain that [the] expert, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Expert testimony cannot be based on mere "belief or speculation, and inferences must be derived using scientific or other valid methods." *See Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). "An

experiential expert may testify on the basis of either 'experience alone' or 'experience in conjunction with other skill, training or education.'" *Coalition for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, 295 F. Supp. 3d 540, 554 (D. Md. 2017) (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)). "Such testimony satisfies the reliability requirement where the expert can 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *Id.* (quoting *Wilson*, 484 F.3d at 274).

As explained on the record, Dr. Kerr is qualified as an economist to testify to the economic effects of alcohol regulations, including his proffered opinions: (1) about how Maryland's regulatory scheme promotes orderly market conditions; (2) that permitting out-of-state retailers to ship and sell alcohol that is not routed through Maryland's regulatory system compromises Maryland tax revenues; (3) that Maryland's direct beer delivery law protects the health and safety of Maryland's citizens by precluding the availability of lower cost alcohol; and (4) that increased availability of alcohol leads to increased price competition, lower prices, and higher alcohol consumption. (ECF No. 75-2 at 7 (summarizing report).) As explained on the record, these opinions fall squarely within his expertise as an economist who has conducted extensive research of alcohol regulation and policies. Dr. Kerr is also qualified to testify to a limited extent regarding his opinion that Maryland's direct beer delivery law prevents the sale of beer to underage drinkers and limits the geographic range of a producer's beer sales by requiring delivery by the producer's employees. (*Id.*) Dr. Kerr may testify to this opinion to the extent that he limits his testimony to the economic effect of the limited

geographic range of beer sales.  Accordingly, Plaintiffs' Amended Motion (ECF NO. 84) is DENIED IN PART to the extent it seeks to limit Dr. Kerr's testimony on these bases.

Dr. Kerr is not qualified, however, to testify to broad sociological or societal concerns regarding the use of alcohol.  Specifically, he is not qualified to testify to opinions about how Maryland's current regulatory scheme for alcohol allows it to inspect, audit, and sanction all producers, including those with delivery licenses, which ensures product integrity and protects consumers from unsafe and banned products.  (ECF No. 75-2 at 7.)  As explained on the record, Dr. Kerr is not an expert in product safety and, as such, is not qualified to offer opinions about how regulations affect consumer safety.  Relatedly, Dr. Kerr is not an expert in broader social or societal safety concerns and public health and safety objectives, including his opinions that the challenged laws reduce drunk driving, alcohol-involved crimes and mortality, risky sexual behavior, and lost productivity.  (*Id.* at 7–8.)  Although Defendants assert that Dr. Kerr has extensive research experience regarding the social and public health concerns related to alcohol consumption, his education is focused on the economic impact of various alcohol regulations.  Accordingly, as explained on the record, he can offer minimal testimony as to his opinion that subjecting alcohol sold to Maryland consumers to Maryland's higher taxation promotes numerous public and safety objectives.  Any specific or extensive testimony regarding reductions in drunk driving, alcohol-involved crimes and mortality, risky sexual behavior, and lost productivity, however, will be subject to exclusion.  Thus, Plaintiffs' Amended Motion is GRANTED IN PART to the extent it seeks to exclude Dr. Kerr's testimony regarding the broad public health and safety concerns listed above and stated on the record.

## II. Defendants' Amended Motion *in Limine* (ECF No. 78)

In their Amended Motion, Defendants initially objected to four paragraphs of proposed testimony from Plaintiffs' expert Mr. Kuhr. Specifically, they objected to Paragraphs 2, 4, 8, and 9 of his expert report (ECF No. 78 Ex. A ¶¶ 2, 4, 8, 9) on the basis that he was not qualified as an expert on those topics. Paragraph 2 of Mr. Kuhr's report generally states that the FDA, manufacturer, local or state health agencies, and the Alcohol and Tobacco Tax and Trade Bureau ("TTB") are involved in food safety recalls, and "[s]tate alcohol regulatory and law enforcement agencies would not usually play a role . . . ." (*Id.* at 18 ¶ 2.) Paragraph 4 of his report generally provides that "food safety risks involved in the production of wine mirror those of beer" and "Maryland currently allows the transportation of wine from out of state producers directly to consumers by common carriers." (*Id.* at 19 ¶ 4.) Paragraph 8 states, "[t]he concern for the sale and delivery of beer to minors is the same as with wine. The same rules applied to wine can be used for beer." (*Id.* at 20 ¶ 8.) Finally, Paragraph 9 of Mr. Kuhr's report provides "[i]t is my opinion that the Three Tier System of alcohol distribution in the United States is one designed to facilitate the collection of taxes rather than one designed with an eye toward food safety." (*Id.* at 20 ¶ 9.)

As an initial matter, all parties agreed on the record that Mr. Kuhr is qualified as an expert under Rule 702, *Daubert*, and *Kumho Tire*, to opine regarding food product safety. For this reason, Defendants conceded that they do not object to Mr. Kuhr's proposed testimony in Paragraphs 2, 4, and 8 to the extent that he offers such opinions from a product safety standpoint. Plaintiffs agreed that Mr. Kuhr is offered only as a food- and product safety expert such that his proffered opinions do not reflect sociological or broad public health and safety

15

opinions. Accordingly, as explained on the record, Defendants' Motion is DENIED to the extent that it seeks to limit Mr. Kuhr's testimony in Paragraphs 2, 4, and 8 of his expert report. *See* (ECF No. 78 Ex. A). Relatedly, all parties agreed on the record that Mr. Kuhr's proposed opinion in Paragraph 9 of his report regarding the purpose of alcohol regulation systems in the United States is beyond the scope of his expertise and must be excluded. Accordingly, as stated on the record, Defendants' Amended Motion (ECF No. 78) is GRANTED as to Paragraph 9 of Mr. Kuhr's expert report (ECF No. 78 Ex. A), which shall be excluded.

## CONCLUSION

For the reasons stated above and on the record, it is this 10th day of November 2025 hereby ORDERED that (1) Plaintiffs' Amended Motion *in Limine* (ECF No. 84) is GRANTED IN PART and DENIED IN PART, and (2) Defendants' Amended Motion *in Limine* (ECF No. 78) is GRANTED IN PART and DENIED IN PART.

A separate Order follows.

Date: November 10, 2025

/s/
Richard D. Bennett
United States Senior District Judge